UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

J & J SPORTS PRODUCTIONS, INC.,

    Plaintiff,

v.

LONE STAR CAFÉ & PUB, *et al.*,

    Defendants.

C12-0764RSL

ORDER DIRECTING ENTRY OF DEFAULT JUDGMENT

This matter comes before the Court on plaintiff's "Motion for Default Judgment." Dkt. # 10. Having reviewed the papers filed in support of the motion and the remainder of the record, the Court finds as follows:

**Background**

Plaintiff J & J Sports Productions, Inc., is a distributor of sports and entertainment programming. Plaintiff obtained the domestic commercial exhibition rights to broadcast the "Battle of East and West: Manny Pacquiao v. Ricky Hatton, IBO Light Welterweight Championship Fight Program" which took place on May 2, 2009. In a bid to protect its investment from erosion caused by the pirating of its closed-circuit signals, plaintiff retains investigators and law enforcement personnel to detect and identify unauthorized and unlicensed broadcasts of its programs. One of these investigators found

ORDER DIRECTING ENTRY
OF DEFAULT JUDGMENT –   1

that the Battle of East and West was unlawfully exhibited by defendants.  Plaintiff filed this action on May 1, 2012.  Despite service of summons on August 12, 2012, defendants have not appeared or filed a responsive pleading.  Upon plaintiff's motion, the Clerk entered default against both defendants.  Dkt. # 9.

## Discussion

**A.  Alternative Statutory Claims**

Plaintiff alleges that defendants violated 47 U.S.C. § 553 and 47 U.S.C. § 605 and seeks statutory damages under both statutes.  Although the Ninth Circuit has not yet addressed the issue, other courts have concluded that the remedies provided by Sections 553 and 605 are mutually exclusive.  See TKR Cable Co. v. Cable City Corp., 267 F.3d 196, 207 (3d Cir. 2001) ("We therefore conclude that § 605 encompasses the interception of satellite transmissions 'to the extent reception or interception occurs prior to or not in connection with, distribution of the service over a cable system,' and no more.  H.R. Rep. No. 98-934, at 83, reprinted in 1984 U.S.C.C.A.N. at 4720."); United States v. Norris, 88 F.3d 462, 469 (7th Cir. 1996) ("[W]e cannot agree with the government that § 553(a) and § 605(a) are overlapping statutes . . . .  Rather, we find that cable television programming transmitted over a cable network is not a 'radio communication' . . . , and thus its unlawful interception must be prosecuted under § 553(a) and not § 605."); Kansas City Cable Partners v. Espy, 250 F. Supp.2d 1296, 1302-03 (D. Kan. 2003) (holding that "§ 605 applies to radio signals . . . transmitted through the air, and § 553 applies to radio communications transmitted via a wire or cable system"); Garden City Boxing Club, Inc. v. Stone, 285 F. Supp.2d 447, 452 (D. Del. 2003) ("Congress created § 553 to address an enforcement gap created by the 1968 modification of § 605, which rendered § 605 applicable only to satellite transmissions insofar as they are actual airborne transmissions. . . .  Once a satellite transmission reaches a cable system's wire distribution phase, it is subject to § 553 and is no longer within the purview of § 605.").

Plaintiff has not alleged whether it offered the Battle of East and West via cable, satellite, or both. Nor has plaintiff provided any evidence or allegations concerning the format in which defendants allegedly intercepted or received the communication. Thus, the Court cannot determine which of the statutes, § 553 or § 605, applies in this case. Although both statutes authorize an award of statutory damages, they provide different limits. Section 553 permits recovery of not less than $250 and not more than $10,000, or up to $50,000 in the case of willful violation, while § 605 sets statutory damages at a minimum of $1,000 and a maximum of $10,000, or $100,000 for willful violations. See 47 U.S.C. § 553(c)(3)(A) & (B) and § 605(e)(3)(C)(i) & (ii). Because plaintiff has neither alleged facts from which one could conclude that § 605 applies nor made an adequate factual showing concerning which of the two statutes was violated, the Court will award damages under the statute with lower limits, namely § 553. See J & J Sports Productions, Inc. v. Tsoulouhas, C08-0695TSZ (W.D. Wash. Dec. 23, 2008).

**B. Damages Under § 553**

Pursuant to § 553(c)(3):

(A) Damages awarded by any court under this section shall be computed in accordance with either of the following clauses:

(i) the party aggrieved may recover the actual damages suffered by him as a result of the violation and any profit of the violator that are attributable to the violation which are not taken into account in computing the actual damages . . .

(ii) the party aggrieved may recover an award of statutory damages for all violations involved in the action, in a sum of not less than $250 or more than $10,000 as the court considers just.

(B) In any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory under subparagraph (A), by an amount of not more than $50,000.

(C) In any case where the court finds that the violator was not aware and had no reason to believe that his acts constituted a violation of this section, the court in its discretion may reduce the award of damages to a sum of not less than $100. . . .

Plaintiff does not seek actual damages under § 553(A)(i), and instead requests an award of the maximum statutory damages, plus an additional $50,000 for willful violations.

**(1) § 553(c)(3)(A)**

Plaintiff offers no justification for requesting the maximum statutory award other than a desire to deter such conduct in the future. While deterrence is clearly one of the factors to be considered, other factors – such as the number of violations, the price at which defendants could have legally licensed the program, the existence of a cover fee, advertising for the pirated broadcast, premium food or drink prices during the broadcast, or other facts suggesting that defendants targeted plaintiff's broadcast or made money from the program – suggest that the lower end of the spectrum of statutory damages is more appropriate. See Kingvision Pay-Per-View Ltd. v. Villalobos, 554 F. Supp. 2d 375, 383-84 (E.D.N.Y. 2008). Plaintiff presents evidence of a single broadcast on a single screen, during which its investigator observed the presence of 28 or fewer patrons, none of whom was required to pay a cover charge. Affidavit of Joseph M. Gagliardi (Dkt. # 10-3), Ex. B (Investigator's Affidavit).[1] Plaintiff offers a flyer in support of its assertion that it charged $1,600 for a business of defendant's size to broadcast the program (Affidavit of Joseph M. Gagliardi (Dkt. # 10-3), Ex. C), but no foundation is provided and the flyer purports to be the work of a separate entity, G & G Closed Circuit Events, LLC. Plaintiff offers no evidence from which one could conclude that defendants attracted additional customers, sold additional food or beverages, or made any profits as a result of the illegal broadcast. Even if the Court assumes that the amount G & G Closed Circuit Events, LLC, charged for access to the program is probative of the market value of the product defendants illegally intercepted and that some

---

[1] In its motion, plaintiff states that, "[a]ccording to the investigator Joe Martin, there were between 28 to 32 patrons present and there were promotional tabletop advertisements for UFC 90/91." Motion (Dkt. # 10) at 8. This assertion was apparently left over from another case: none of the alleged facts is supported by evidence. They have, therefore, not been considered.

ORDER DIRECTING ENTRY
OF DEFAULT JUDGMENT –   4

deterrent award is necessary, a claim for $10,000 in these circumstances is unjustified and unreasonable. The Court finds that an award of double the actual damages is appropriate.

**(2) § 553(c)(3)(B)**

While it is possible that defendants may have some innocent explanation for the unlicensed broadcast on May 2, 2009, they gave up the opportunity to defend their conduct when they failed to respond to the summons and complaint served in this litigation. Plaintiff alleged that the violation was willful and provided evidence that mistaken, innocent, or accidental interception is highly unlikely. Nevertheless, § 553(c)(3)(B) is written in the conjunctive and requires plaintiff to show not only that the alleged violation was willful, but also that it was committed "for purposes of commercial advantage or private financial gain." Plaintiff has not alleged, much less shown, that defendants profited in any way from the broadcast of the Battle of East and West.

**(3) § 553(c)(2)(C)**

Finally, plaintiff seeks an award of the costs and reasonable attorney's fees as the prevailing party under 47 U.S.C. § 553(c)(2)(C). Plaintiff's claim for $440 in costs and $840 in attorney's fee is reasonable and will be awarded.

**C. Conversion**

In addition to its claim for statutory damages under § 553, plaintiff also requests $1,600 in damages related to its conversion claim. As mentioned above, this claim is based entirely on the amount G & G Closed Circuit Events LLC apparently charged businesses like Lone Star Café & Pub to broadcast the Battle of East and West. Even if probative of what plaintiff could have negotiated as a license fee, this amount has already been taken into consideration when awarding damages under § 553. Duplicative damages will not be awarded.

ORDER DIRECTING ENTRY
OF DEFAULT JUDGMENT –   5

**Conclusion**

For the foregoing reasons, plaintiff's motion for default judgment (Dkt. # 10) is GRANTED in part and DENIED in part. The Court awards plaintiff the following amounts:

| | |
|---|---|
| Statutory Damages under § 553(c)(3)(A)(ii) | $3,200 |
| Statutory Damages under § 553(c)(3)(B) | $ 0 |
| Damages for Tort of Conversion | $ 0 |
| Attorney's Fees | $ 840 |
| Costs | $ 440 |
| TOTAL: | $4,480 |

The Clerk of Court is directed to enter judgment in favor of plaintiff and against defendants in the amount of $4,480, and to mail a copy of this Order to defendants at 911 S 22nd Ct., #A, Mount Vernon, WA 98273.

Dated this 14th day of February, 2013.

*/s/ Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DIRECTING ENTRY
OF DEFAULT JUDGMENT –   6